# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

# State of South Dakota.

---

## BASKERVILLE v. GAAR, SCOTT & CO.

Where a machine company employs an agent to sell its machines in a certain territory on commission, and, pending his negotiations with a contemplated purchaser, the company's assistant of local agents, knowing of the negotiations, without such agent's knowledge procures the purchaser to accompany him to the office of the company's general agent, where the sale is closed by the latter, who is advised that the purchaser resided in such agent's territory, and presumably knew of the previous negotiations, such agent is entitled to his commissions on the sale.

(Opinion filed November 21, 1900.)

Appeal from circuit court, Codington county. HON. JULIAN BENNETT, Judge

Action by M. R. Baskerville against Gaar, Scott & Co. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The facts are stated in the opinion.

*John M. Rees* and *Matthews & Murphy,* for appellant.

The normal meaning of language in a written instrument can

no   more   be   changed   by   construction,   than   it   can be   contradicted   directly,   by   an   avowed   inconsistent argument   on   the   strength of   the   talk   of   the   parties   at the time   the instrument   was   signed.     Violette   v.   Rice, 53 N. E. 144;   Black v. Batchelder, 120 Mass. 171;   Flynn v. Bourneuf, 143 Mass. 277;   Power Co. v. Howard, 150 Mass, 495;   Goode v. Riley, 153 Mass. 585;   Poole v. Pluh, 171 Mass. 49;   Grunston v. Cunningham, 1 O. B. 125;

A broker has no right to put himself in a position antagonistic to the interest of his employer, and cannot be both buyer and seller. Com v. Cooper, 130 Mass. 285.   A broker cannot collect commissions from both the buyer and seller.   Pugsley v. Murray, 4 E. D. Smiths, 245;   Chapman v. Currie, 51 Mo. Opp. 40;   Bell v. McConnell, 37 Ohio St. 396.   Deutsch v. Baxter, 9 Colo. App. 58;   Walker v. Osgood, 98 Mass. 348;   Campbell v. Baxter, 41 Neb. 729;   Kronenburger v. Fricke, 22 Ill. App. 550;   Carmen v. Black, 63 N. J. 97; Everhart v. Searle, 71 Pa. 256;   Phinney v. Hall, 101 Mich. 451; Wilson v. Webster, 88 Ia. 514.

*John B. Hanten (C. X. Seward* of Counsel) for respondent.

When an agent commences negotiations and introduces buyer to principal, he is entitled to his commission though the sale is consummated by principal.   Scott v. Patterson, 13 S. W. 419;   Lloyd v. Matthews, 51 N. J. 124;   Lincoln v. McClotchie, 36 Conn. 136; Butler v. Kennard, 36 N. W. 579;   Hartley v. Dorr, 19 N. W. 632; Anderson v. Cox, 20 N. W. 10;   Nichols v. Jones,   37 N. W. 679; Carroll v. Pettit, 22 N. J. 250;   Brundage v. McCormick, 23 N. J. 262;   Ratts v. Shepherd,   14 Pac, 496;   Ford v. Easley, 55 N. W. 336;   Wood v. Wells, 61 N. W. 503; Ransom v. Weston, 68 N. W. 152.

An agent is entitled to commission when the sale is made to a

party procured by agent, though made by the principal and for a less sum than the original price: Levy v. Crogan, 9 N. Y. 534; Dailey v. Young, 13 N. Y. 435; Reynolds v. Tompkins, 23 W. Va. 229; Scribner v. Hazeltine, 44 N. W. 618.

An agent is entitled to his commission when he has procured a party ready, able and willing to purchase upon the owner's terms, although the agent has not made a binding contract of sale with such purchaser: Francis v. Baker, 47 N. W. 452; McLaughlin v. Wheeler, 2 S. D. 379, 47 N. W. 816; Jarvis v. Schæber, 11 N. E. 634.

An agent is entitled to his commission if sale by agent is prevented by the act of the principal. 2 Black on Contracts, § 1721; Fultz v. Wimer, 9 Pac. 316; Wilson v. Sturgis, 16 Pac. 772; Stewart v. Mather, 32 Wis. 344; Nolan v. Swift, 69 N. W. 96.

FULLER, P. J.   At the trial of this action to recover an agent's commission on certain sales of threshing machinery there was a verdict and judgment for plaintiff, and the defendant appeals.   The first cause of action stated in the complaint is based upon a written contract between the parties, by which respondent is authorized to sell appellant's threshing machines at list price in certain territory in this state on commission, and the second cause of action is to recover a commission of 10 per cent. pursuant to an oral agreement subsequently made, and by which respondent aided in procuring a purchaser for a machine sold by appellant in the city of Minneapolis, to be used within the territory covered by respondent's written contract.   Neither of the sales for which respondent recovered his commission were actually closed by him, but there was evidence tending to show that, in accordance with his contract, he paid freight on appellant's machinery, kept it in stock at his warehouse in the city of Watertown, and employed men to canvass the territory therefor,

and to properly adjust and put in operation its threshing outfits. Respondent kept a machine set up at his place of business for the examination of prospective purchasers, and, at his own expense, a short time prior to the sale made by appellant within the territory covered by his contract, furnished a team and sent an assistant in the employ of appellant for the benefit of its local agents, with one of his regular canvassers, to negotiate such sale. Though the parties then objected to paying the list price, below which respondent could not sell, and insisted upon seeing the machine before they bought, the following negotiations were had, as shown by the testimony of McDowell, the canvasser whom respondent sent out there in company with Mr. Kyle, the assistant of local agents, for the purpose of closing sales: "We talked to Mattechecks. Tried to sell them a Gaar-Scott machine. Gave them price and they thought the price was too high. They intended to purchase a Gaar-Scott machine. There was talk of further consideration of purchasing. They stated they would see further about buying this kind of a machine. Also stated that they preferred this kind of a machine. * * * We informed the Mattechecks, whom we represented at the time; and Baskerville's name was mentioned, and that I represented him, and that we represented the Garr, Scott & Co., and that Baskerville was the Watertown agent for said company." From the undisputed evidence the inference is reasonable that the Mattechecks intended to buy the Gaar-Scott machine at the time these two representatives of respondent left them, and what thereafter occurred is shown by the following testimony of Joseph Mattecheck, who appears to have conducted all subsequent negotiations: "The difference between us was we didn't agree on terms they gave us, and we told them we wouldn't buy until we saw the machine, and that was the reason why the deal was not closed. We wanted to see the machine first. In a few days after-

wards, Kyle came up to see us again. He gave us terms that he would sell the machine for, and I went to Minneapolis with him, at his expense, and looked the machine over. I saw Mr. Shephard there. I told Mr. Shephard where I lived, and that my nearest post-office address was Webster. I bought the machine. Mr. Kyle was with me. The notes were given for $2,440. This machine that I bought has since been all paid for." Mr. Shephard, the general agent at Minneapolis, who made the written contract with respondent, and by reducing the price several hundred dollars below that for which the latter was authorized to sell effected the sale in question, had it in his power to make it impossible for respondent to close a sale, and such transactions as the present would disable him from the performance of his contract. Though controverted in some material respects, there is evidence sufficient to justify the jury in finding that the purchasers of this machine were influenced to some extent by the solicitation of respondent's canvasser, McDowell, whose efforts, with the aid of Kyle, were the procuring cause of the sale. Mr. Kyle, whose duty it was to assist respondent in closing this sale, returned to the Mattechecks in a few days, and, without respondent's knowledge or consent, induced one of them to accompany him to Minneapolis, where the transaction was closed by Mr. Shepherd, who was fully advised that the purchasers resided in respondent's territory, and who is presumed to have known of the negotiations that had previously taken place. Now, appellant had placed Kyle in a fiduciary relation with respondent as an assistant, and it would be grossly unjust to permit either the company or Kyle to use information obtained from such agent for the purpose of depriving him of his commission, in violation of the trust, by effecting a sale through his efforts, and by reason of such information. It is undisputed that Kyle obtained these names of respondent, who sent him, with McDowell,

to their place of residence, to aid in making the sale; and that the purchase resulted from that visit and the subsequent negotiations of Kyle, assisted by the general agent of appellant. Concerning real estate transactions upon principle identical with this, it seems to be well settled that a principal who obtains from his agent knowledge of a purchaser who intends to buy, owes to such agent the duty of either terminating the agency or notifying him that he will personally conduct all future negotiations; and on failure so to do the agent is entitled to the stipulated commission although the sale is completed by the principal at a lower price than that for which the agent had authority to sell. Carroll v. Pettit, 67 Hun, 418, 22 N. Y. Supp. 250; Wood v. Wells (Mich.) 61 N. W. 503; Stewart v. Mather, 32 Wis. 344; Butler v. Kennard, (Neb.) 36 N. W. 579; Scott v. Patterson, (Ark.) 13 S. W. 419; Ratts v. Shepherd, (Kan. Sup.) 14 Pac. 496; Anderson v. Cox, (Neb.) 20 N. W. 10. "A broker employed to sell real estate earns his commission, if, through his instrumentality the buyer and seller meet, and negotiations are thus opened between them which culminate in a sale, though for a sum less that that first fixed by the principal." Levy v. Coogan, (Com. Pl.) 9 N. Y. Supp. 534; Carter v. Webster, 79 Ill. 435; Lincoln v. McClatchie, 36 Conn. 136. While appellant had a right to sell its machinery in the territory covered by respondent's contract, it would be wrong, both morally and legally, to deprive him of the compensation stipulated for in his contract by giving persons with whom he was negotiating a sale, and who actually intended to buy, a discount nearly equal to the agents commission, computed upon the list price, by which he was bound. The testimony admitted in support of the first cause of action, and submitted to the jury under valid instructions to which no exception was taken, is sufficient to sustain the verdict, and there is no merit in any of the objections urged to

the introduction of such evidence. The second cause of action is based upon a sale not made pursuant to respondent's contract, nor within his territory, but by reason of the fact that he sent a canvasser from such territory, with another person, whose expenses he paid, to the city of Minneapolis, where the sale was consummated through his instrumentality by appellant's managing agent, who then and there entered into an oral agreement to pay respondent for such services 10 per cent of the price for which the machine was sold; and upon the evidence introduced at the trial the jury returned a verdict for such amount. From a careful examination of all available assignments of error, we are convinced that a trial fairly conducted resulted in a just judgment, which we hereby affirm.