SURBAUGH *v.* DAWSON.

Opinion delivered March 21, 1932.

*C. T. Carpenter,* for appellant.
*Knott & Spencer,* for appellee.

SMITH, J. Appellee recovered a judgment, from which is this appeal, for a commission alleged to have been earned by him upon the sale of a tract of land owned by appellant, which appellee had been employed to sell.

Stated in the light most favorable to appellee, the facts disclosed in the record are as follows: Appellee had an agency to sell the land, the terms thereof being defined in the correspondence between the parties. The agency was not exclusive, nor was it for a definite time. While this contract was in force, appellee showed the land to Faggs and priced it to him, but no sale was made because Faggs declined to make the cash payment required by appellant. Subsequent attempts by appellee to sell the land to Faggs failed for the same reason. The letters above referred to were all written in January, 1930, the last being dated January 21, 1930. Appellant wrote appellee a letter in which the agency was definitely canceled. Appellee testified this letter was received only three months before appellant himself sold the land to Faggs. Appellant testified this letter was written several months earlier.

However, after this letter was written, appellant leased the land—a farm—to Carlton for a year, with an option to Carlton to renew the lease on the same terms for a period of three years. The good faith of this transaction is not questioned. Carlton occupied the land under this lease for a short period of time, when he surrendered it. Thereafter, one Thompson told Faggs that appellant was in possession of his farm, and was offering it for sale. Thompson introduced Faggs to appellant. They had never previously met. Faggs did not tell either Thompson or appellant that he had ever discussed the

purchase of this land with appellee, and appellant was without information to that effect until he sold the land to Faggs on November 1, 1930.

Appellant made a reduction in the price for which he had authorized appellee to sell, but, in consideration of this reduction, the sale was made on an all-cash basis of $4,250, of which $2,250 was paid in cash to appellant. The $2,000 balance was paid by the agreement to discharge a mortgage for that amount outstanding against the land.

It has been held in a number of cases that, where a real estate agent employed to sell land introduces a purchaser to the seller, and through such introduction a sale is effected, the agent is entitled to his commission, although a sale was later made by the owner. *Scott* v. *Patterson,* 53 Ark. 49, 13 S. W. 419; *Hunton* v. *Marshall,* 76 Ark. 375, 88 S. W. 963; *Hodges* v. *Bayley,* 102 Ark. 200, 143 S. W. 92; *Horton* v. *Huddleston,* 132 Ark. 396, 200 S. W. 1003; *Carpenter* v. *Phillips,* 157 Ark. 609, 249 S. W. 357; *Johnson* v. *Garrett,* 174 Ark. 682, 297 S. W. 839.

It was held in the case of *Moore* v. *Moss,* 117 Ark. 593, 175 S. W. 1195, that a real estate broker is entitled to his commission where he has been given authority to sell the land and produced a purchaser ready, willing and able to pay, but the sale is delayed by the seller, and the property is finally sold to the purchaser provided by the broker.

But it is also settled law that, when an agency is not exclusive, the owner may sell it himself without liability for commission. *Gammell* v. *Cox,* 143 Ark. 72, 219 S. W. 745.

It is also well settled that, when an agency is not for a definite time, it may be discharged at the pleasure of the owner, provided the discharge is in good faith and not done for the purpose of defeating the payment of the agent's commission. One must, of course, act in good faith with his agent, and will not be permitted to discharge him as a subterfuge to prevent the payment of the commission where the owner later sells to the purchaser provided by the agent.

The instant case is not unlike that of *Bodine* v. *Penn Lumber Co.,* 128 Ark. 347, 194 S. W. 226, in which case it was contended by the agent that he was the procuring cause of the sale and entitled to a commission, notwithstanding there was a cancellation of the agency before the sale was made. We said, however: "We do not think this contention is well founded. There was no length of time specified in the contract between plaintiff and defendant, and the authority to sell was revocable at any time, subject only to the limitation that it should be done in good faith. [Citing cases.]"

The instant case is similar also to that of *Johnson* v. *Knowles,* 169 Ark. 1089, 277 S. W. 868, in which case the headnote reads as follows: "Where a broker showed a house to a prospective purchaser, who declined to purchase it, but three months later rented the house, and thereafter purchased it from the owner, there being no connection between the broker's efforts and the sale, the agent was not entitled to a commission."

Here, under appellee's own testimony, the agency was not exclusive, and was not for a definite time. The agent failed to procure a purchaser ready, willing and able to buy upon terms under which the agent was authorized to sell. The agency was definitely terminated, and there was no testimony that this was not done in good faith. The owner had never met Faggs, and did not know, until after he had sold him the property, that Faggs had ever been interested in its purchase. It is true appellant sold the land for a less price than he had authorized appellee to sell it for, but it is true also that he received a much larger cash payment than he had directed appellee to demand.

We conclude therefore, under the undisputed testimony, that appellee was not entitled to a commission upon this sale, and the judgment in his favor must therefore be reversed, and, as the case appears to have been fully developed, it must be dismissed, and it will be so ordered.